**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ASSOCIATION OF CORPORATE COUNSEL,

Plaintiff,

v.

THE SUITE, INC.,

Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Association of Corporate Counsel ("ACC" or "Plaintiff"), by its undersigned attorneys, hereby files this Complaint against Defendant The Suite, Inc. d/b/a The L Suite ("The L Suite" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. ACC is a global non-profit association that promotes the common professional and business interests of in-house counsel through information, education, networking opportunities, and advocacy initiatives.

2. ACC supports over 48,000 members spread across over 100 different countries. As part of its mission, ACC develops, publishes, and distributes an extensive body of original content and member resources, including continuing legal education programming, benchmarking surveys and white papers, practice toolkits, and other professional publications, articles, legal checklists, peer practice advice, sample forms, policies, and contracts. For more than four decades, ACC has been the premier source of information, education, and networking for the in-house bar, and it is widely known throughout that community by its longtime registered trademark, BY IN-HOUSE COUNSEL, FOR IN-HOUSE COUNSEL.

3. The L Suite, a for-profit corporation, apparently founded in 2015, is a direct competitor of ACC's in-house counsel membership base and advertises itself as "the premier community for in-house legal executives."

4. The L Suite recently unveiled and began promoting an artificial intelligence tool called Lloyd. The L Suite describes its Lloyd product as follows:

> Lloyd augments the foundation models (e.g., ChatGPT, Claude, Grok, Voyage) by adding a layer of knowledge from your trusted peers and expert partners in The L Suite community to give you more informed, comprehensive, sourced and practical results that you can have confidence in. . . . Lloyd helps in-house counsel make smarter decisions by drawing on the market-tested wisdom of thousands of experienced GCs and senior in-house counsel that have actually handled similar situations in the past, together with the trusted insights of the leading experts in the field. ***The key difference comes down to the data***. . . .

*See* **Exhibit 1** (screen capture of Lloyd FAQ on The L Suite's website) (emphasis added).

5. In other words, Lloyd is an AI front end that surfaces answers and materials based on an L Suite database or platform of materials.

6. But rather than have its Lloyd software provide answers based upon its own materials, The L Suite or its members chose to ingest ACC's proprietary materials into the database from which Lloyd draws. These materials include at least one ACC proprietary legal benchmarking report.

7. Amazingly, not only did The L Suite ingest ACC's proprietary materials into its Lloyd product without acknowledgment or authority, The L Suite brazenly *promoted* its Lloyd product by showing the public that ACC materials could be accessed via Lloyd. For example, The L Suite's main webpage for Lloyd prominently featured a looped video showing a user searching Lloyd and surfacing what appears to be a 2024 ACC Law Department Management Benchmarking Report. This report, however, was a doctored version of ACC's original report.

8. But The L Suite did not stop at merely promoting Lloyd on the basis of ACC's materials. The L Suite went further, blatantly using ACC's well-known and longstanding trademark BY IN-HOUSE COUNSEL, FOR IN-HOUSE COUNSEL to promote its product.

9. By using ACC's proprietary materials and promoting its services in this way, The L Suite has engaged in unfair competition, as well as violating ACC's copyright and trademark rights.

10. After becoming aware of The L Suite's conduct, ACC sent The L Suite a cease a desist letter. While The L Suite removed some *public* references to ACC's materials and trademark, The L Suite has refused to take responsibility for its actions. In fact, The L Suite has refused to provide ACC with even basic facts regarding the extent of ACC materials that have been used in connection with the Lloyd platform. As a result, ACC was left with no choice but to file this lawsuit.

11. ACC brings this action against The L Suite for trademark infringement, unfair competition, and false designation of origin in violation the Lanham Act, 15 U.S.C. § 1051 *et seq.*, copyright infringement in violation of the Copyright Act, 17 U.S.C. Section § 101 *et seq.*, injury to business reputation and trademark dilution in violation of the Delaware Trademark Act, 6 *Del C.* § 3313, violation of the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § 2531 *et seq.*, and trademark infringement and unfair competition in violation of Delaware common law. ACC seeks an injunction, damages, and other related relief.

## THE PARTIES

12. Plaintiff ACC is a Washington D.C. not-for-profit corporation having its headquarters and principal place of business at 1001 G Street NW, Suite 300W, Washington, D.C. 20001.

13. Defendant The L Suite is a Delaware corporation with a commercial registered agent located at 108 W. 13th Street, Suite 100, Wilmington, Delaware 19801. The L Suite claims to be a "fully-remote company" with no central offices.

## JURISDICTION AND VENUE

14. ACC's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Copyright Act, 17 U.S.C. Section § 101 *et seq.*, and Delaware statutory and common law. This Court has subject matter jurisdiction over ACC's claims arising under the Lanham Act and Copyright Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the claims arising under Delaware law pursuant to 28 U.S.C. § 1367, in that those claims are related to claims under this Court's original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

15. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity between ACC and The L Suite.

16. This Court has personal jurisdiction over Defendant The L Suite because Defendant is incorporated in the State of Delaware and has purposefully availed itself of the privilege of conducting business in this district. According to Defendant's filings with the Delaware Department of State, The Suite, Inc. was incorporated as a Delaware domestic corporation on April 18, 2016, with a registered agent located at 108 W. 13th Street Suite 100, Wilmington, Delaware 19801.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendant resides in this district.

## FACTUAL BACKGROUND

### I. ACC'S TRADEMARK RIGHTS

18. Originally founded in 1981, ACC has grown from a small organization of in-house counsel into a non-profit worldwide network of in-house legal professionals. Today, ACC is a global bar association with over 48,000 members spread across over 100 different countries.

19. Since at least 1998, ACC has continuously used the mark BY IN-HOUSE COUNSEL, FOR IN-HOUSE COUNSEL (the "IN-HOUSE Mark") in connection with, *inter alia*, legal support services, educational and training services, and association services tailored to corporate legal counsel.

20. ACC is the owner of all rights in and to the IN-HOUSE Mark in the United States in connection with these same services.

21. In addition to the extensive common law rights ACC has developed in the IN-HOUSE Mark, ACC owns U.S. Registration No. 4,491,049 (the "IN-HOUSE Registration") for the IN-HOUSE Mark in Class 035 for "Association services, namely, promoting the interests, professional advancement and education of corporate legal counsel, and fostering relations, communications and exchanges of ideas between corporate legal counsel, academics, professionals, students and other persons," in Class 041 for "Educational and training services, namely, conducting classes, seminars, conferences and workshops in the field of law via telephone, video conferencing and over the Internet, and distributing course materials in connection therewith; publication of books, journals, and newsletters; on-line publication of books, journals, and newsletters; on-line library services, namely, providing electronic library services which feature newspapers, magazines, photographs and pictures via an on-line computer network," and in Class 045 for "Legal services; providing information relating to legal affairs via the Internet; litigation support services for issues affecting and interests relevant to attorneys, namely, creating and submitting written materials before courts and administrative bodies; legal support services,

namely, developing legal resources in the nature of sample forms and policies, benchmarking, checklists, and materials used for guidance, for use by attorneys."

22. ACC's IN-HOUSE Registration has a registration date of March 4, 2014. This registration is valid and subsisting and constitutes *prima facie* evidence of ACC's exclusive right to use the IN-HOUSE Mark in commerce in connection with the services specified in the IN-HOUSE Registration. The IN-HOUSE Registration has achieved incontestable status pursuant to 15 U.S.C. § 1065.

23. A true and correct copy of ACC's IN-HOUSE Registration, along with a printout showing title and status at the USPTO, are attached together as **Exhibit 2**.

24. ACC has given notice of its registered rights in the IN-HOUSE Mark by using the ® symbol in connection with its registered trademark. An example of ACC's use of its IN-HOUSE Mark is depicted in the screen capture below, taken from ACC's website at https://www.acc.com/, and also attached as **Exhibit 3**.




25. Since at least 2003, ACC has continuously used the mark ASSOCIATION OF CORPORATE COUNSEL (the "ASSOCIATION Mark") in connection with, *inter alia*, legal support services, educational and training services, and association services tailored to corporate legal counsel.

26. ACC is in the owner of all rights in and to the ASSOCIATION Mark in the United States in connection with these same services.

27. In addition to the extensive common law rights ACC has developed in the ASSOCIATION Mark, ACC owns U.S. Registration No. 3,831,792 (the "ASSOCIATION Registration") for the ASSOCIATION Mark in Class 035 for "Association services, namely, promoting the interests, professional advancement and education of corporate legal counsel, and fostering relations, communications and exchanges of ideas between corporate legal counsel, academics, professionals, students and other persons," in Class 041 for "Educational and training services, namely, conducting classes, seminars, conferences and workshops in the field of law via telephone, video conferencing and over the Internet, and distributing course materials in connection therewith; publication of books, journals, and newsletters; on-line publication of books, journals, and newsletters; on-line library services, namely, providing electronic library services which feature newspapers, magazines, photographs and pictures via an on-line computer network," and in Class 045 for "Providing information in the field of law via the Internet; litigation support services for issues affecting and interests relevant to attorneys, namely, creating and submitting written materials before courts and administrative bodies; legal support services, namely, developing legal resources, such as sample forms and policies, benchmarking, checklists, and materials used for guidance, for use by attorneys."

28. ACC's ASSOCIATION Registration has a registration date of August 10, 2010. This registration is valid and subsisting and constitutes *prima facie* evidence of ACC's exclusive right to use the ASSOCIATION Mark in commerce in connection with the services specificied in the ASSOCIATION Registration. The ASSOCIATION Registration has achieved incontestable status pursuant to 15 U.S.C. § 1065.

29. A true and correct copy of ACC's ASSOCIATION Registration, along with a printout showing title and status at the USPTO, are attached together as **Exhibit 4**.

30. ACC's IN-HOUSE Mark and ASSOCIATION Mark (together, the "ACC Marks") are distinctive.

31. The ACC Marks are uniquely associated with ACC and its professional services listed above, and serve to distinguish ACC's services from those of its competitors.

32. ACC has expended considerable amounts of time, effort, and expense to promote the ACC Marks.

33. By virtue of these efforts, and the quality of ACC's services, ACC owns valuable goodwill and recognition associated with these two ACC trademarks.

## II. ACC'S COPYRIGHTED REPORT

34. ACC has expended significant resources, including creativity, talent, time, effort, and money, to create its annual benchmarking reports.

35. ACC owns all copyrights in its annual benchmarking reports, including its 2024 ACC Law Department Management Benchmarking Report – Executive Summary (the "ACC Report").

36. ACC originally published its ACC Report on June 25, 2024. The ACC Report is available for download on ACC's website.

37. ACC registered the ACC Report with the U.S. Copyright Office on June 26, 2026. A true and correct copy of the registration certificate for U.S. Registration No. TX 9-611-029 is attached as **Exhibit 5**.

38. The ACC Report is designed for in-house legal professionals and provides valuable insights into legal department operations.

39. The ACC Report is an original work of authorship and contains copyrightable subject matter under the laws of the United States.

40. The front cover of the ACC Report contains substantial copyrightable subject matter. This subject matter includes, *inter alia*, the design, color, and placement of text against a geometric background with different shades of blue. A true and correct copy of the ACC Report's front cover is depicted below and also attached as **Exhibit 6**.




41. ACC's copyright in the ACC Report is valid and subsisting and was valid and subsisting at all relevant times.

**III. THE L SUITE'S UNLAWFUL CONDUCT**

42. Founded in 2015, The L Suite promotes and sells membership-based services specifically for in-house counsel.

43. According to The L Suite's website, "The L Suite's comprehensive membership is carefully designed to help make you a better CLO. Benefits include a powerful and collaborate member platform, confidential benchmarking data and survey insights, regular industry-leading

events and workshops, and much more." *See* **Exhibit 7** (screen capture from The L Suite's website, available at https://www.lsuite.co/).

44. The L Suite recently introduced an AI tool called Lloyd. The L Suite advertises Lloyd as a "community-powered AI" available exclusively for members of The L Suite.

45. ACC has never authorized The L Suite to use the ACC Marks or ACC's copyrighted material for any purpose. The L Suite is not a licensee of ACC and has no other business relationship with ACC. Likewise, The L Suite has never sought or received ACC's permission to use the ACC Marks or ACC's copyrighted material.

46. However, earlier this year, ACC learned that The L Suite was using ACC's registered trademarks and copyrighted material to promote The L Suite's directly competitive services.

47. First, The L Suite has prominently utilized the tagline, "built by in-house counsel, for in-house counsel" to advertise its new Lloyd AI tool.

48. For example, The L Suite has prominently displayed this tagline on its website:




*See* **Exhibit 8** (screen capture from The L Suite's website).

49. The L Suite has also prominently displayed this tagline in at least one YouTube video and caption on The L Suite's YouTube channel:




*See* **Exhibit 9** (screen capture from The L Suite's YouTube channel).

50. In addition, The L Suite has prominently displayed this tagline in at least one promotional video posted on LinkedIn:




*See* **Exhibit 10** (screen capture of LinkedIn post with video).

51. The L Suite's "built by in-house counsel, for in-house counsel" tagline is confusingly similar to the ACC's IN-HOUSE Mark. The L Suite's tagline incorporates the entirety of ACC's distinctive BY IN-HOUSE COUNSEL, FOR IN-HOUSE COUNSEL trademark. The

addition of the word "built" does not distinguish The L Suite's tagline from ACC's IN-HOUSE trademark.

52. The L Suite's "built by in-house counsel, for in-house counsel" tagline is an obvious and intentional reference to ACC's well-known brand.

53. Separately, The L Suite has also used ACC's ASSOCIATION Mark on The L Suite's website.

54. For example, The L Suite's website has featured a promotional video that displays ACC's ASSOCIATION Mark on a modified version of the ACC Report:




*See* **Exhibit 11** (screen capture from The L Suite's website).

55. The L Suite used this promotional video—which features ACC's ASSOCIATION Mark in its entirety—to advertise The L Suite's own services and Lloyd AI tool.

56. In addition, The L Suite's co-founder posted this same video on LinkedIn in order to introduce and promote Lloyd. *See* **Exhibit 12** (screen captures of LinkedIn post with promotional video).

57. The L Suite's unauthorized use of the ACC Marks is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of The L Suite with ACC, or as to the origin, sponsorship, or approval of The L Suite's services.

58. Consumer confusion is especially likely because both ACC and The L Suite are competitors that provide services to in-house attorneys throughout the United States.

59. There is at least some overlap between ACC members and L Suite members.

60. Given all of the above, consumers are very likely to believe that The L Suite and its Lloyd tool are affiliated with or sponsored by ACC, or that ACC has approved the use of its materials by The L Suite, all of which is untrue.

61. On information and belief, this confusion is precisely what The L Suite intends by its unauthorized use of the ACC Marks. That is, The L Suite has used the ACC Marks with an intent to unlawfully and unfairly benefit from the goodwill associated with ACC's distinctive ACC Marks and to cause consumer confusion.

62. The L Suite has also exploited ACC's copyrighted materials to power and promote its Lloyd product without authorization.

63. For example, The L Suite has created and displayed a promotional video on its website and LinkedIn featuring a modified, derivative version of the ACC Report.

64. The L Suite created this promotional video by first taking a number of screen capture images, at least one of which included the entire front cover of the ACC Report. The L Suite then instructed a generative AI program, Claude, to create an "animated GIF" video based

on these screenshots. The L Suite published this promotional video in a prominent location on The L Suite's website and on LinkedIn.

65. As a result, there can be no doubt that The L Suite was specifically aware that its Lloyd platform was utilizing ACC materials. Not only did The L Suite continue to use ACC's materials, the L Suite actually *featured* ACC's materials on the main Lloyd webpage to showcase what documents users could expect to surface using Lloyd.

66. The front cover displayed in this video is modified from the original cover of the ACC Report. Below is a side-by-side comparison of ACC's original version and the derivative version displayed in The L Suite's video:




Original ACC version (Exhibit 6)




Modified The L Suite version (Exhibit 11)

67. Nonetheless, the original ACC cover and The L Suite's modified version are strikingly similar.

68. The L Suite's modified report cover copies a substantial amount of copyrightable material from the ACC Report, including, *inter alia*, the specific design, color, and placement of text against a geometric background with different shades of blue. Both images include virtually identical language, in the same color, arranged in roughly the same place.

69. The L Suite has improperly reproduced, distributed, and otherwise exploited ACC's work without ACC's permission. Moreover, The L Suite has created and displayed an unauthorized derivative work based on the ACC Report.

## IV. ACC'S CEASE AND DESIST LETTER AND CONTINUED INFRINGEMENT

70. On May 27, 2026, ACC sent a cease and desist letter to The L Suite demanding that The L Suite cease its unlawful conduct. A true and correct copy of ACC's letter is attached as **Exhibit 13**.

71. Thus, at a minimum, The L Suite had actual knowledge of the ACC Marks and related registrations since no later than May 27, 2026.

72. The L Suite has refused to provide information to the ACC regarding the extent of ACC materials that have been used in connection with The L Suite's member platform and/or Lloyd.

73. While The L Suite has denied wrongdoing, it did remove most public instances of its use of ACC materials and trademarks. However, The L Suite has not stopped using ACC's trademark entirely.

74. In particular, even after receiving ACC's cease and desist letter, The L Suite uploaded a YouTube video on June 8, 2026, with a caption that begins: "Lloyd is The L Suite's community-powered AI, built **by in-house counsel, for in-house counsel**" (emphasis added).




*See* **Exhibit 14** (screen capture from The L Suite's YouTube channel).

75. The L Suite did so with full knowledge of ACC's rights in and to the registered IN-HOUSE trademark, and the likelihood of confusion resulting from The L Suite's tagline.

**COUNT I**

**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114(1)(A))**

76. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint as though fully set forth herein.

77. The L Suite first used the ACC Marks long after ACC had established rights in its ACC Marks.

78. The L Suite's use of the ACC Marks is likely to confuse, mislead, or deceive consumers, potential consumers, and the general purchasing public as to the source, origin, sponsorship, or affiliation between The L Suite's services and ACC.

79. The L Suite's use of the ACC Marks is likely to cause such people to erroneously believe that The L Suite's services, including Lloyd, have been authorized, sponsored, approved, endorsed, or licensed by ACC or that The L Suite is in some way affiliated with ACC.

80. The L Suite's aforementioned acts were without ACC's license, permission, consent, and/or authorization.

81. The L Suite's unauthorized use of the ACC Marks in connection with The L Suite's services constitutes trademark infringement of ACC's federal registered trademarks, which has caused damage to ACC and the substantial business and goodwill embodied in ACC's ACC Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

82. The L Suite has committed the foregoing acts of infringement with full knowledge of ACC's rights in the ACC Marks and with willful intent.

83. The L Suite's conduct has injured ACC in an amount to be determined at trial and has caused and, if not enjoined, will continue to cause irreparable injury to ACC for which ACC has no adequate remedy at law.

84. ACC is entitled to, among other relief, injunctive relief and an award of actual damages, The L Suite's profits, enhanced damages and profits, reasonable attorneys' fees, and the costs of this action pursuant to Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

**COUNT II**

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**

85. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint as though fully set forth herein.

86. The L Suite's unauthorized use of the ACC Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of The L Suite's services.

87. The L Suite's unauthorized use of the ACC Marks is likely to cause consumers to erroneously believe that The L Suite's services are sold, authorized, endorsed, or sponsored by ACC, or that The L Suite is in some way affiliated with or sponsored by ACC.

88. The L Suite's unauthorized use of ACC's ACC Marks constitutes the use of a false designation or origin, false or misleading description of fact, and/or false or misleading representation of fact.

89. The L Suite's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of The L Suite with ACC.

90. The L Suite's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

91. The L Suite's conduct has directly harmed ACC's reputation in the marketplace and diverted goodwill and sales away from ACC to The L Suite.

92. The L Suite's conduct has injured ACC in an amount to be determined at trial and has caused and, if not enjoined, will continue cause irreparable injury to ACC, for which ACC has no adequate remedy at law.

93. ACC is entitled to, among other relief, injunctive relief and an award of actual damages, The L Suite's profits, enhanced damages and profits, reasonable attorneys' fees, and the costs of this action pursuant to 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT III

## COPYRIGHT INFRINGEMENT
**(17 U.S.C. § 101 *et seq.*)**

94. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95. ACC owns a valid copyright in the ACC Report, along with U.S. Registration No. TX-9-611-029. *See* **Exhibit 5**.

96. ACC registered the ACC Report with the U.S. Copyright Office prior to commencing this action.

97. As the copyright owner of the ACC Report, ACC reserves and retains the bundle of exclusive rights granted under the Copyright Act, 17 U.S.C. § 106, including the right to reproduce, distribute copies, and prepare derivative works of the ACC Report.

98. The L Suite has exploited ACC's original work for the purpose of advertising and selling The L Suite's competitive services throughout the United States.

99. In the process of creating and displaying the promotional video described above, The L Suite has reproduced, distributed, and/or made a derivative work of the ACC Report. In so doing, The L Suite has violated ACC's exclusive rights.

100. The modified report cover displayed in The L Suite's promotional video is substantially and strikingly similar to the cover of ACC's copyrighted ACC Report.

101. The L Suite's knowledge of and access to the ACC Report is demonstrated by The L Suite's taking at least one screenshot of the ACC Report.

102. ACC did not authorize The L Suite's reproduction, distribution, or creation of a derivative work of the ACC Report.

103. On information and belief, The L Suite has acted willfully and with a conscious disregard for ACC's exclusive rights in the ACC Report.

104. The L Suite's conduct therefore constitutes willful copyright infringement in violation of the Copyright Act.

105. As a direct and proximate result of The L Suite's infringement, ACC has suffered damages in an amount to be determined at trial.

106. The L Suite's conduct has also caused and, if not enjoined, will continue to cause irreparable injury to ACC, for which ACC has no adequate remedy at law.

107. ACC is entitled to, among other relief, injunctive relief and an award of the damages, including attorneys' fees and costs, ACC has sustained and will sustain, and any gains, profits, and advantage obtained by The L Suite as a result of its acts of its infringement as alleged above, in an amount to be determined at trial.

**COUNT IV**

**INJURY TO BUSINESS REPUTATION AND TRADEMARK DILUTION UNDER DELAWARE TRADEMARK ACT (6 *Del. C.* § 3313)**

108. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109. By its actions alleged herein, The L Suite has created a likelihood of injury to ACC's business reputation and/or dilution of the distinctive quality of the ACC Marks in violation of 6 *Del. C.* § 3313.

110. The L Suite's conduct has caused, or is likely to cause, a reduction in the distinctiveness of ACC's ACC Marks, and/or a tarnishment of the goodwill and recognition associated with the ACC Marks.

111. The L Suite has committed the foregoing violations of 6 *Del. C.* § 3313 with full knowledge of ACC's rights in the ACC Marks and with willful intent.

112. The L Suite's conduct has injured ACC in an amount to be determined at trial and has caused and, if not enjoined, will continue to cause irreparable injury to ACC for which ACC has no adequate remedy at law.

113. Pursuant to 6 *Del. C.* § 3313, ACC is entitled to injunctive relief enjoining and restraining The L Suite from engaging in further acts of injury to ACC's business reputation and/or dilution.

**COUNT V**

**VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT (6 *Del. C.* § 2531 *et seq.*)**

114. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115. By its actions described above, The L Suite has engaged in deceptive trade practices in violation of 6 *Del. C.* § 2532 because, in the course of its business, The L Suite has *inter alia* (a) caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of The L Suite's services by ACC; and (b) caused likelihood of confusion of confusion or of misunderstanding as to affiliation, connection, or association with, or certification of The L Suite's services by ACC.

116. ACC has been damaged and will continue to be damaged by The L Suite's deceptive trade practices.

117. The L Suite has willfully engaged in the deceptive trade practices described above, entitling ACC to treble damages and attorneys' fees pursuant to 6 *Del. C.* § 2533.

**COUNT VI**

**COMMON LAW TRADEMARK INFRINGEMENT**

118. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 117 of this Complaint as though fully set forth herein.

119. ACC has used the ACC Marks throughout the United States and within the State of Delaware to market and sell its services long before The L Suite's use of these trademarks in connection with The L Suite's competing services.

120. By virtue of having used the ACC Marks, ACC has acquired common law interests in these two trademarks.

121. The L Suite first used the ACC Marks long after ACC had established rights in these two trademarks.

122. The L Suite's use of the ACC Marks is likely to confuse, mislead, or deceive consumers, potential consumers, and the general purchasing public as to the source, origin, sponsorship, or affiliation between The L Suite's services and ACC.

123. The L Suite's use of the ACC Marks is likely to cause such people to erroneously believe that The L Suite's services have been authorized, sponsored, approved, endorsed, or licensed by ACC or that The L Suite is in some way affiliated with ACC.

124. The L Suite's aforementioned acts were without ACC's license, permission, consent, and/or authorization.

125. The L Suite's unauthorized use of the ACC Marks in connection with The L Suite's competing services constitutes trademark infringement of ACC's trademarks, which has caused damage to ACC and the substantial business and goodwill embodied in ACC's ACC Marks in violation of the common law of the State of Delaware.

126. On information and belief, The L Suite has committed the foregoing acts of infringement with full knowledge of ACC's rights in the ACC Marks, and with willful intent.

127. The L Suite's conduct has injured ACC in an amount to be determined at trial and has caused and, if not enjoined, will continue to cause irreparable injury to ACC, for which ACC has no adequate remedy at law.

## COUNT VII

## COMMON LAW UNFAIR COMPETITION

128. ACC repeats and incorporates by reference the allegations contained in paragraphs 1 through 127 of this Complaint as though fully set forth herein.

129. The L Suite, without ACC's authorization or consent, has used the ACC Marks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the true source, sponsorship, or affiliation of The L Suite's services with ACC.

130. The L Suite's conduct has enabled The L Suite to earn profits to which The L Suite is not in law, equity, or good conscience entitled, leading to the unjust enrichment of The L Suite at the expense of ACC.

131. The L Suite's conduct has unfairly damaged ACC's reputation in the marketplace and diverted goodwill and sales away from ACC.

132. On information and belief, The L Suite has acted with knowledge of ACC's trademark rights in the ACC Marks and with a willful and malicious intent to cause confusion, mistake, or deception.

133. The L Suite has promoted and advertised its services with the express intent of misleading consumers into believing that The L Suite's services are affiliated with or approved by ACC.

134. The L Suite's aforementioned acts constitute unfair competition in violation of the common law of the State of Delaware.

135. The L Suite's conduct has injured ACC in an amount to be determined at trial and has caused and, if not enjoined, will continue to cause irreparable injury to ACC, for which ACC has no adequate remedy at law.

136. The L Suite's willful and oppressive misconduct justifies the assessment of punitive damages against The L Suite pursuant to Delaware law in an amount to be determined at trial.

## JURY DEMAND

ACC demands a trial by jury as to all claims and all issues properly triable thereby.

## REQUEST FOR RELIEF

WHEREFORE, ACC respectfully requests that this Court enter judgment as follows:

A. An order that The L Suite has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a);

B. An order that The L Suite has committed copyright infringement in violation of the Copyright Act (17 U.S.C. § 101 *et seq.*);

C. An order that The L Suite has engaged in injury to business reputation and trademark dilution in violation of the Delaware Trademark Act (6 *Del. C.* § 3313);

D. An order that The L Suite has engaged in deceptive trade practices in violation of the Delaware Deceptive Trade Practices Act (6 *Del. C.* § 2531 *et seq.*);

E. An order that The L Suite has engaged in common law trademark infringement and unfair competition;

F. An order enjoining The L Suite, The L Suite's officers, agent, employees, attorneys, and all other persons in active concert with any of the foregoing who receive actual notice of the judgment by personal services or otherwise, from:

i. manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote any goods or services bearing the ACC Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the ACC Marks;

ii. engaging in any activity that infringes ACC's rights in its ACC Marks;

iii. engaging in any activity constituting unfair competition with ACC;

iv. falsely advertising or otherwise misrepresenting that The L Suite's services, Lloyd, or any other The L Suite product are in any way related to ACC;

v. committing any other acts calculated or likely to cause consumers to believe that The L Suite or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by The L Suite are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with ACC or constitute or are connected with ACC's products or services;

vi. registering any domain name that includes ACC's ACC Marks, or any confusingly similar designation;

vii. engaging in any activity that infringes ACC's rights in its ACC Report;

viii. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (vii).

G. An order requiring The L Suite to recall and deliver up to the Court for destruction all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing ACC's ACC Marks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of the ACC Marks;

H. An order requiring The L Suite to modify all digital signage, marketing materials, internet and social media content, products, packaging, and promotional material, including online advertisements or other digital promotional materials, to eliminate the ACC Marks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of the ACC Marks;

I. An order requiring The L Suite to immediately identify to ACC each of its manufacturers, distributors, suppliers, and website operators through whom The L Suite has sold or advertised its services, and all others with whom The L Suite does business, and to provide

to each a copy of the Court's injunction order, and otherwise inform them in writing that they must immediately cease, upon pain of contempt of the Court, the manufacture, distribution, marketing, advertising, and sale of any goods or services using the ACC Marks, or any confusingly similar trademark;

J. An order requiring The L Suite to file with this Court and serve on ACC's counsel a written report under oath setting out in detail the manner and form in which The L Suite has complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment on The L Suite;

K. An order declaring that this is an exceptional case under 15 U.S.C. § 1117 and awarding ACC its reasonable attorneys' fees and costs due to the egregious nature of The L Suite's acts;

L. An order requiring The L Suite to provide to ACC an accounting of all profits derived from The L Suite's wrongful acts, and directing that such profits be paid over to ACC pursuant to 15 U.S.C. § 1117, enhanced as appropriate to compensate ACC for the damages caused thereby;

M. An order awarding ACC all actual damages it sustains as a result of The L Suite's unlawful acts, and trebling those damages;

N. An award to ACC of treble and/or enhanced damages under 15 U.S.C. § 1117 and any other applicable statute or law for The L Suite's willful, intentional, and wanton misconduct;

O. An order awarding ACC, at ACC's election, statutory damages of $150,000 for The L Suite's willful infringement of the ACC Report, pursuant to 17 U.S.C. § 504(c);

P. An order awarding ACC punitive and exemplary damages as the Court finds appropriate to deter The L Suite and all others similarly situated from like malicious and willful misconduct in the future;

Q. An order awarding ACC its reasonable attorneys' fees and the costs of this action;

R. An order awarding ACC interest, including pre- and post-judgment interest, on the foregoing sums;

S. An order retaining jurisdiction of this action for the purpose of enabling ACC to apply to this Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

T. Such other and further relief as the Court may deem to be just and proper.

/s/ *Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
Andrew L. Rosen (#7651)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
rawnsley@rlf.com
rosen@rlf.com

*Attorneys for Plaintiff Association of Corporate Counsel*

OF COUNSEL:

Robert D. Leighton (*pro hac vice* forthcoming)
Paul J. Sauerteig (*pro hac vice* forthcoming)
GOLDBERG KOHN, LTD.
55 E. Monroe, Suite 3300
Chicago, IL 60622
312-201-4000
robert.leighton@goldbergkohn.com
paul.sauerteig@goldbergkohn.com

Dated: September 10, 2026